FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 AUG -2  PM 1:05

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel SCHUMANN RAFIZADEH | CIVIL ACTION |
| | NO. 04-1778 |
| VERSUS | |
| | SECTION "C" |
| CONTINENTAL COMMON, INC., BASIC CAPITAL MGMT., REGIS PROPERTY MGMT., TRANSCONTINENTAL REALTY INVESTORS | DIVISION (3) |

### ORDER AND REASONS

Before the Court is Schumann Rafizaheh's Motion for Leave to File Second Amended Complaint. [Rec. Doc. No. 30]. The motion was the subject of an oral hearing, following which the matter was taken under advisement. For the following reasons, the Court GRANTS the plaintiff's Motion for Leave to File Second Amended Complaint.

### PERTINENT PROCEDURAL BACKGROUND

On June 25th, 2004, Schumann Rafizadeh (hereinafter referred to as "Rafizadeh" or "Relator") filed the captioned *qui tam* action[1] pursuant to the False Claims Act (FCA), 31 U.S.C. § 3729 et. seq., regarding alleged overcharges on office spaced leased in the 1010 Common

---

[1] "*Qui tam*" is shorthand for the Latin phrase "*qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means 'who pursues this action on our Lord the King's behalf as well as his own.'" *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 768 n. 1 (2000). In practice, the phrase means "an action under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive." Garner, A Dictionary of Modern Legal Usage at 728 (2d ed. 1995). *Qui tam* actions under the False Claims Act are authorized by 31 U.S.C. § 3730(b)(1).

Building, which houses employees of the State of Louisiana Departments of Social Services ("DSS") and Health and Hospitals ("DHH"), entities which are allegedly subsidized by the Federal Government. Insofar as the presentment of "false claims" are concerned, plaintiff alleges that (1) the leases in question were not acquired through the competitive bidding process as required by the Code of Federal Regulation, (2) the actual amount of space occupied by the aforesaid lessees falls considerably short of the negotiated "usable square feet" stated in the Leases and (3) the "negotiated" rates are well in excess of the prevailing market rates.

The defendants targeted are Continental Common, Inc. (owner of 1010 Common St.), Trancontinental Realty Investors., Inc. (owner of Continental Common, Inc.), Basic Capital Management, Inc. and Regis Property Management, LLC (real estate management companies that derive revenues from the leases in question). Plaintiff claims that defendants violated § 3729 (a)(7) of the False Claims Act,[2] which provides liability for certain acts to wit:

> Any person who ... (7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government, is liable to the United States Government for a civil penalty ....[3]

According to § 3730 of the FCA, a "qui tam" claimant must adhere to the following procedural requirements: (1) the action must be brought in the name of the Government; (2) the complaint must be filed in camera and under seal; (3) the plaintiff must serve a copy of the complaint and a written disclosure of all material evidence on the Government; and (4) the complaint shall not be served on the defendant until the court so orders. 31 U.S.C. § 3730. In

---

[2]*See* Plaintiff's First Amended Complaint at ¶ 24 [Rec. Doc. No. 6].

[3]31 U.S.C. § 3729 (a)(7)

this case, it is not disputed that the plaintiff has complied with the strict procedural requirements of § 3730.

The issue raised by the defendants is relator's alleged failure to plead fraud with particularity. On May 25, 2005, defendants filed a Motion to Dismiss [Rec. Doc. No. 21], arguing that the relator failed to comply with the dictates of Fed. R. Civ. P. 9(b). Therein, defendants argued that "[r]elator must, at a minimum, set forth the who, what, when, where and how of the alleged fraud."[4] More particularly, defendants' specifically noted that, while relator did identify § 3729(a)(7) as the section of the FCA allegedly violated, he failed to do so "within the strictures of Rule 9(b)."[5] More particularly, defendants contention was that Rafizadeh failed to allege with the requisite specificity the particular statements which were purportedly made by each of the Defendants to the U.S. Government, what was contained in those statements, how those statements were false, when those statements were presented to the U.S. Government and what the Defendants received from the U.S. Government for those statements.

Because relator's motion for leave to file a second amended complaint was pending and the defendant's motion solely addressed the adequacy of the First Amended Complaint, the district judge dismissed the defendants' motion to dismiss "without prejudice as moot," noting that (1) at a minimum, specification of which subsection of § 3729 is being invoked seems appropriate in cases alleging fraud and (2) it appears that the only false claim specified in First

---

[4] *See* Defendant's Memorandum in Support of Motion to Dismiss, at p. 3 (inner quotation marks omitted) (*quoting U.S. ex rel. Thompson*, 125 F.3d 899, 903 (5th Cir. 1997)).

[5] *Id.* at p. 4.

3

Amended Complaint was § 3729(a)(7).[6]

In summary, it is clear on the face of the record that the district judge did not determine the sufficiency of either the Original or the First Amended *Qui Tam* Complaint and therefore, this is not a case involving repeated failures to remedy any previously adjudicated legal deficiencies.

## CONTENTIONS OF THE PARTIES

Relator contends that the second amended complaint clarifies his prior pleadings and complies with the strictures of Rule 9(b) particularity, by further defining "the who, what, when and where." Rafizadeh highlights that the proposed amended complaint neither adds new parties nor any new causes of action. Relator adds that the liberal standard of Fed. R. Civ. P. 15 is applicable because the instant motion was filed before any responsive pleading was filed and there has been no scheduling conference.

Defendants oppose the plaintiff's motion, arguing the "futility" of the amendment. Addressing Rule 9(b) with particularity, defendants contend that relator's proposed second amended complaint also fails to comply, notwithstanding the fact that the sufficiency of the plaintiff's first amended complaint was never tested. Defendants cite the case of *United States ex rel. Totten v. Bombardier*, 380 F.3d 363 and argue that each and every subsection of 31 U.S.C. § 3729 must be particularly plead because of the different standards applicable to each. In summary, the defendants' position is that the plaintiff's motion for leave to amend fails to cure the deficiencies previously identified and thus it must be denied on the basis of the futility of the amendment.

---

[6]*See* Order and Reasons dated June 27, 2005, at p. 3 n. 2[Rec. Doc. 39].

## DISCUSSION

### Fed. R. Civ. P. 15 (a) Standard

Pursuant to Fed. R. Civ. P. 15(a), "leave to amend shall be freely given when justice so requires," it "is by no means automatic."[7] Relevant factors in the determination of granting leave to amend include "undue delay, bad faith or dilatory motive on the part of movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment."[8] All of these are plausible reasons for a district court to deny a party's request for leave to amend.[9]

Fed. R. Civ. P. 15(a) permits amendment of a pleading after a responsive pleading has been served with leave of court. Furthermore, the court should freely give leave to amend "when justice so requires." It is often said that this determination rests in the sound discretion of the district court.[10] The underlying policy of the federal rules is to permit liberal pleading and amendment, thus facilitating adjudication on the merits while avoiding excessive formalism.[11] Thus, if the district court lacks a "substantial reason" to deny leave, its discretion "is not broad

---

[7] *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

[8] *Id.*

[9] *Goldstein v. MCI Worldcom*, 340 F.3d 238, 254 (5th Cir. 2003).

[10] *See, e.g., Chitimacha Tribe of Louisiana v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir.1982), *cert. denied*, 464 U.S. 814 (1983).

[11] *Dussouy*, 660 F.2d at 598 (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)).

enough to permit denial."[12]

A court may deny a motion to amend if the proposed amendment would be futile.[13] The Rule 12(b)(6) standard guides a court's analysis of the amendment's futility, and the court examines the complaint in the light most favorable to the plaintiff.[14] Amendments are futile if the theory presented lacks legal foundation or was presented in a prior version of a complaint.[15] "When futility is advanced as the reason for denying an amendment to a complaint, the court is usually denying leave because the theory presented in the amendment lacks *legal* foundation...."[16]

On the issue of futility, the defendants argue that the relator has failed to demonstrate a false claim for payment to the federal government and highlights the absence of any allegation that any one of the defendants made a false claim to the Government. However, in *United States ex rel. Riley v. St. Luke's Episcopal Hospital,* the Fifth Circuit held:

> The FCA applies to anyone who knowingly assists in causing the government to pay claims grounded in fraud, without regard to whether that person has direct contractual relations with the government. Thus, a person need not be the one who actually submitted the claim forms in order to be liable.[17]

---

[12] *Dussouy*, 660 F.2d at 598.

[13] *Sylvie v. City of Dallas*, 2002 U.S. Dist. LEXIS 9777, at *5 (N.D.Tex. May 29, 2002) (*citing J.R. Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 872-873 (5th Cir.2000)).

[14] *J.R. Stripling*, 234 F.3d at 873; *see also Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir.1985).

[15] *See Jamieson*, 772 F.2d at 1208.

[16] *Id.*

[17] *United States ex rel. Riley v. St. Luke's Episcopal Hospital,* 355 F.3d 370, 378 (5th Cir. 2004) (citations and quotations omitted); *see also United States of America v. City of Houston,* 2005 WL 1155111 * 3 (S. D. Tex. May 5, 2005) (Ellison, J.)

The Court here notes that plaintiff's pleadings are legion. Plaintiff's original and first amended complaints together with appended exhibits fill volume one of the record in this case. More particularly, plaintiff's *in globo* Exhibits I through III include five leases involving the DHH or DSS, the State of Louisiana Bid Specification No. RL-519A and various correspondence from the State of Louisiana and others regarding the lease negotiations, *inter alia*. Relator's proposed Second Amended Complaint charts the negotiated rental rates for the DHH and DSS leases, explains the definitions/calculation of "usable square feet" of the subject leased premises and charts lease overcharges to the Federal Government over the period of several years. Plaintiff further specifies that certain statements – *i.e.*, "73,046 'usable square feet' stated in the DHH Lease" and that "84,626 'usable square feet' stated in the DSS Lease" – are "false."[18] Plaintiff has also appended the pertinent leases and the budgets for both DHH and DSS. Relator specifies the basic manner in which statements in the lease documents at issue are allegedly fraudulent and provides an explanation of the falsity with factual detail.

Defendants cite *United States ex rel. Totten v. Bombadier*, 380 F.3d 488 (D. C. Cir. 2004) for the proposition that, for FCA liability to attach, a false claim must be presented to an officer of the Government.[19] It is noteworthy that the *Totten* decision addresses liability under subsections (a)(1) and (a)(2) of the FCA. The *Totten* court based its determination on the clear and unambiguous language of those subsections, which specifically applies to "false or fraudulent claims for payment or approval" (3729(a)(1)) and "false and fraudulent claims paid or

---

[18]*See* Relator's Proposed Second Amended Complaint at ¶¶ 28 and 32.

[19]*See United States ex rel. Totten v. Bombadier*, 380 F.3d 488, 492-93 (D. C. Cir. 2004), *cert. denied*, 125 S.Ct. 2257 (2005).

approved by the Government" (3729(a)(2)).

Unlike *Totten, supra,* Rafizadeh's claim for liability under the FCA concerns other theories of liability, including "fraud in the inducement,"[20] "false certification"[21] and subsection (a)(7), *i.e.*, the reverse false claim provision. Under the "fraud in the inducement" theory of liability, FCA liability attaches because of the fraud surrounding the efforts to obtain the contract or benefit status, or the payments thereunder.[22] The appropriate inquiry under the "false certification" theory of liability is whether the relator has alleged that the defendants made false certifications of compliance on which payment was based. As to the alleged "reverse false claim," such a claim cannot proceed without proof that the defendant made a false record or statement at a time that the defendant owed to the government an obligation sufficiently certain to give rise to an action of debt at common law.[23]

Most notably, Rafizadeh does not seek to add any new claims or parties. Rather, Rafizadeh's proposed Second Amended Complaint simply supplements relator's Original and

---

[20] *See United States ex rel. Marcus v. Hess,* 317 U.S. 537 (1943) (finding government contractors liable under the FCA for claims submitted under a contract that was obtained through false statements in contract negotiations); *United States v. Azzarelli,* 647 F.2d 757, 758 (7th Cir. 1981) (bid rigging involving highway construction project).

[21] *See United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899 (5th Cir. 1997); *Mikes v. Strauss,* 274 F.3d 687 (2nd Cir. 2001); *United States ex rel. Hopper v. Anton,* 91 F.3d 1261 (9th Cir. 1996).

[22] *See Harrison v.Westinghouse Savannah River Co.,* 176 F.3d 776, 788 (4th Cir. 1999) (discussing fraud in the inducement cases).

[23] *American Textile Manufacturers Institute, Inc. v. The Limited, Inc.,* 190 F.3d 729, 736 (6th Cir. 1999) (discussing § 3729(a)(7) and noting that "[w]hatever its scope, the False Clams Act clearly encompasses specific legal duties to pay or transmit money or property to the government" and a defendant risks liability when making a false statement to conceal, avoid or decrease obligations....").

8

First Amended Complaint with additional factual allegations, charts, graphs, calculations and exhibits, purportedly putting the defendants on notice of the specifics regarding his *qui tam* action.

This does not appear to be a case in which the plaintiff is attempting to take advantage of Rule 15(a). A review of the record does not support a finding that these proposed amendments are sought in bad faith or for any dilatory purpose. Moreover, it does not appear that the proposed amendments will cause any undue delay or prejudice to defendants. To the contrary, denial of the motion to amend *to add facts* further clarifying relator's theory of recovery will likely infuse delay and forestall consideration of the defendants' motion to dismiss, the merits of which should be considered by the district judge in the first instance.

In the absence of prejudice to the opposing party, leave to amend must be freely given[24] and this rule is not different where the plaintiff seeks to supplement his factual allegations rather than add new claims.[25] In *Joseph v. Cannon*, 1996 WL 41849 *1 (E. D. La. 1996), the district judge reversed the ruling of the Magistrate Judge denying the plaintiff's timely motion to amend, which sought to add factual allegations. The district judge explained:

> This Court's review of the plaintiffs' motion to file an amended complaint reveals that the plaintiffs seek only to add factual allegations and not new claims, to their 42 U.S.C. § 1983 action. *See* Plaintiff's Motion for Leave to File Amended Complaint. Although implicitly finding no prejudice to the defendants, the Magistrate Judge styled the plaintiffs' efforts as "unnecessary and inconsequential" and denied their request. While the Court is inclined to agree with the Magistrate Judge's assessment of plaintiffs' amendments, in the absence of prejudice, plaintiffs' motion to supplement their allegations should have been "freely given." *See Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459,

---

[24]*Foman*, 371 U.S. at 182.

[25]*Tucker v. Navarro County Sheriff*, 1997 WL 279840 * 2 (N. D. Tex. 1997) (Fish, J.).

1464 (5th Cir. 1995); *English v. General Electric Co.,* 765 F.Supp. 293, 297 (E. D. N. C. 1991) ("no useful purpose" in denying motion to amend to add factual allegations to complaint); *Taylor v. Reading Co.,* 23 F.R.D. 186, 188 (E. D. Pa. 1958) (plaintiff's motion to supply "greater fullness of detail" to complaint granted).[26]

The present record presents no sound basis upon which to deviate from the established policy of liberally granting leave to amend to add factual allegations. Accordingly,

**IT IS ORDERED** that Relator's Motion for Leave to File Second Amended Complaint is GRANTED.

New Orleans, Louisiana, this 2nd day of August, 2005.

*[signature]*
**DANIEL E. KNOWLES, III**
**UNITED STATES DISTRICT JUDGE**

---

[26]*Joseph v. Cannon,* 1996 WL 41849 **1-2 (E. D. La. 1996) (Vance, J.).